Before we get started today, I want to begin by moving the admission of one of my law clerks. Since I'll be making the motion, Judge Toronto will preside over the decision. I know, Shana, you might have to hold your breath. I move the admission of Shana K. Cyr, who is a member of the bar and is in good standing with the highest courts of Virginia and the District of Columbia. I have knowledge of her credentials and I'm satisfied she possesses the necessary qualifications. Shana's been my law clerk for a year and it's been my great pleasure to have the opportunity to work with her. In addition to being a very good lawyer, I've really enjoyed watching the way that she has struck excellent balance in her life between work and her kids and just how important her family has been to her. And I hope that, you know, my other clerks also learn from that because it's one of the things that means a lot to me that, you know, I make sure these young people aren't single-minded and they recognize what's really important in the world. And I know that she'll be a great addition to our bar and I look forward to someday seeing you sitting at one of these tables and arguing in front of me. So if my colleagues will deliberate and accept my motion, then you'll be sworn in. We just had a very quick deliberation and the motion is granted. Parties do not expect similar treatment. Please turn to the clerk of court. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court uprightly and according to law and that you will support the Constitution of the United States of America? I do. Welcome to the Bar of the United States Court of Appeals for the Federal Circuit. Thank you. All right. Our first case for today, 2015-1308, Let's Go Aero vs. Sequence Performance. Is it Mr. Kupar? Am I saying it right? That's correct. Kupar? That's right. Please proceed. Thank you, Your Honor. May it please the Court. The settlement agreement language in this dispute is common in many settlement agreements in all types of cases. There's two key clauses to look at. First, there are mutual releases where the parties... Excuse me. Can we talk about jurisdiction first? Of course. Which seems to me at least has been in my mind rather naughty. Under Section 16 of the Arbitration Act, there are only two possible actions of the district court that are in play here. One is the denial of motion to compel arbitration for these claims. And the other would be, if it exists, and we'll get to that, a refusal to stay litigation pending arbitration of these claims. Now, I took it from your gray brief at least that you no longer rely on the denial of the motion to compel because this district court can't grant it anyway, and it doesn't really matter why. So in our reply brief, we did focus on Section 3, which would be the stay portion. So there's two ways a district court can allow arbitration to proceed, as Your Honor noted, which is one, Section 4, granting a motion to compel. And the second way to do it under Section 3 is granting a motion to stay pending the outcome of arbitration. So my problem with the Section 3 is that the district court just never ruled on it. That is, as to these claims, the district court has not refused a stay. In fact, the district court reserved that in the January order. In the March grant of the stay pending appeal, the district court said there's jurisdiction and cited only 16A1B, which is the Section 4 subparagraph, not 16A1A, which is the Section 3 one. And he, in fact, invited briefing on the question whether the litigation should be stayed, not on the ground of reconsidering arbitration, but nevertheless invited briefing on this reserved question of stay. So if we don't have a reviewable denial of motion to compel because the motion to compel couldn't be granted, and the only other possible basis is a refusal to stay and the district court just hasn't done that, how can this case be here? Two answers to that. We still do have a moveable denial based on the compel. And I'll get to that as part of my main argument. So we do still have that. And I would not say that based on a reply that we gave up or waived that argument. And I'll explain very easily why that's the case. There's actually something out of the Joint Appendix regarding a waiver actually of venue and jurisdiction actually by LGA here that prevents the argument under which there is no jurisdiction in the District of Colorado based on an arbitration clause that identifies Chicago. As to the stay, there's actually two stays going on there. And that's naturally and understandably confusing here. Well, there are actually three possible stays. There's the stay pending appeal, which was granted. There's a possible equitable stay of the litigation pending arbitration of the six claims that the district judge did find arbitrable. And then there's a stay of the claims that are now in front of us. Admittedly, the district court isn't going to grant a stay of those claims on the basis of finding them arbitrable. But the district court expressly reserved the question whether nevertheless to stay those claims and didn't rule on that. So on that last point, what the stay was from the federal district court wasn't in regards to Section 3 of the Federal Arbitration Act. That stay was the discretionary stay. I understand that, but why does it matter? The district court has not decided whether to stay the litigation of these six claims pending arbitration. In fact, the district court said he was still considering that. No, the original order from the district court here, which is A1 of our joint appendix, did rule on both the motion to compel, which is Section 4, and the motion to stay, which is Section 3, denying completely the motion to stay under Section 3. But that's the crucial point. He reserved on the stay in part as to these six claims. He didn't rule on it. Our position is that the stay that he reserved on in the district court level there, Your Honor, is based on the ability, the court's inherent ability to determine for judicial economy their docket load. That's what that stay that he invited in that order that he invited additional briefing on was on that basis, but not under Federal Arbitration Act Section 3. This is a slight shift of focus, but to me it's actually related in some way. I want to try to get you to be clearer on something in your gray brief that I think you were quite deliberately trying to not be clear about, and it has to do with whether the Illinois court will be able to consider de novo the arbitrability of the claims that we have in front of us. The district court in Colorado did not say that the Illinois court could consider those claims de novo, but the red brief at 11 through 12 says we're not going to invoke preclusion. You have a petition under Section 4 of the Arbitration Act in front of the court asking for arbitration of all of the claims. Do you think that the Illinois court can decide that de novo? It can. Not only that, but we also believe that LGA would invite that. They said they would. The fundamental problem with LGA's briefing, that's really the first 18 pages of the brief from LGA, is that the argument is no jurisdiction by this court. Here's the problem with that fundamentally and why the Section 4 compel is in play here, and this court does have jurisdiction and can mandate under Section 4 or Section 3 arbitration here. What happened here was the motion to compel was filed by Sequin in Colorado. LGA opposes, and one of the arguments under Tenth Circuit law was this Insignia line of cases which says that if the arbitration clause identifies a different district, then you can object on venue on that basis and raise it. That's exactly what we did. As a belt and suspenders thing, what we did was we raised in front of the northern district of Illinois, because that's what the arbitration clause says, is Chicago. We filed a petition to compel arbitration there as well. Here's the key, and it's A735 to A736. How did LGA respond to Sequin's petition? LGA responded by identifying the doctrine of comedy. It says that the doctrine of comedy supports a stay, so what LGA was looking for was a stay of the northern district of Illinois petition, because the parties litigating the exact same issues before the Colorado District Court. Sequin's motion to compel arbitration has been ripe since October 22, 2014. Let me just stop you. My understanding, when at least I read that in preparing for this, was that that was absolutely and perfectly true and sustainable because the Section 3 request to stay was pending in front of the Colorado Court, and the Colorado Court was fully entitled to decide the arbitrability question in deciding the Section 3 stay request. That doesn't depend on the Section 4 request. I know you put both in the same motion, and there was a shorthand reference to the motion to compel as covering both, so that this is not a waiver of the right to have only the Illinois court and no other court compel arbitration. But this is a waiver. So just to be clear, the LGA position was, leading up to this in Colorado, was the Colorado District Court does not have... Are you from Chicago? I'm not. I'm from Cleveland. Oh, okay. So the Colorado District Court, the LGA position was the Colorado District Court doesn't have jurisdiction or venue on the motion to compel. And Chicago or the Northern District would because obviously that's where Chicago is. We, as a belt and suspenders position, filed a petition to compel arbitration in the Northern District saying if that's true, if they're going to fight that under 10th Circuit law, we have a petition ready to go. This A735, A736 is a waiver of venue and of jurisdiction because think about what the doctrine of comedy is. What it's saying is that based on notions of sound judicial administration, two different courts, in this case both the District Court of Colorado as well as the Northern District of Illinois can hear this arbitration issue, the motion to compel. What LGA went on to say is because the Colorado motion was filed first, the Illinois should stay the petition to compel, not answer it and allow the District Court to do it. Here's the key sentence out of this too, Your Honor, out of A735, that's that first full paragraph there. Last sentence. It says, further, if the Colorado District Court denies the motion, so sequence motion, SQLT will be entitled to review by the 10th Circuit Court of Appeals. Not the wrong appeal court, but the point is that's the key. So it says two things in this statement. One is that the Colorado District Court does have venue and jurisdiction to hear this motion to compel. That's why I jumped immediately to the fact that your motion to compel, which is the subject here. This is docket 29 or something. Is that what it was? Yeah. Which was often referred to with that label alone contained two motions in it. Correct. Section 4, section 3. That's right. Unquestionably, if the District Court denied that motion in full, this would be correct, except for the identification of the circuit. But that would require the rejection of the section 3 stay request. And the problem is that has not happened. It did happen, Your Honor. In that order 29, the District of Colorado order partially granted, partially denied the motion to compel. How can you say that? If you look at page A23, which is where the reserving, the ruling is located, it specifically refers to ECF number 29. So it's not just reserving on the discretionary stay, but on the stay that's in ECF number 29. Which is your section 3 stay request. Right. To be clear. Yeah. So the way we understood this, Your Honors, was that this stay, the stay proceedings here was not under article 3, but rather to stay the proceedings. I can say the way we understood that, but that's sort of irrelevant when the ruling is his ruling on your filing number 29, which is the only stay discussed in filing number 29 is the section 3 stay. So I don't think that your position is reasonable on it, given the way he wrote it. So the request to stay proceedings there is, well, the reservation, and I understand what Your Honor's position about the reservation ruling statement is there. But the bottom line is this, going back to how this got set up to begin with, with the Northern District of Illinois, we raised that petition. And that petition, the only reason that petition was filed was based on the Censari line of cases in the Tenth Circuit, which is waiver, actually not waiver, but an objection based on venue or jurisdiction. That's the only reason we filed what we did in the Northern District of Illinois, is to respond to that position in the opposition brief. When LGA comes back and the response to the petition before the Northern District of Illinois, stay this pending the outcome of the Colorado case, because the Colorado court has full jurisdiction over this. And not only that, if sequent does not prevail, it can go up to a federal appeals court to seek relief. That's a waiver of venue, and that's the waiver of venue and jurisdiction back to Colorado. You can't have it both ways. You can't go. But that's only if the court in Colorado rules on your motion. Which it did. But, again, what about the reservation on the request to stay proceedings listing ECF number 29, which in which the only stay you requested was under Section 3? So, no, the relief we sought was two things, Section 4 and Section 3. I understand. Okay. So you're saying that your waiver applies to Section 4? To both. That's exactly right. By arguing to the Northern District, because think about it, we sought the same relief both in Colorado and Illinois. What was the response from LGA? Northern District of Illinois, this whole briefing, and it's 8735 to 8736, this entire briefing is before the District of Colorado under the doctrine of comedy. There's concurrent jurisdiction, whether it's Colorado or Illinois here. We're well into your rebuttal time. Would you like to save the remainder? I'll save the remainder. Very good. Tell me how to say your name. It's Byer. Byer. I would have gotten it wrong, so I'm glad I asked. Mr. Byer, please proceed. The Appellate Support Council. With me at the council table is Mr. Haskins. The court is right to focus on jurisdiction here. The issue is essentially, as Judge Toronto has described, there are two parts to the appeal.  denial of the request to the stay, but it is our position, and I think the court has properly identified, that there has been no denial of the request for stay. And with respect to the arbitrability issue, there's no reason for this court to reach arbitrability because it, of course, cannot, under the Ansari case, direct the Colorado district. Can I ask you a question? Sure. I wasn't able to quickly, at least, figure out the answer. Suppose the Illinois District Court starts up its proceeding again and rules on the arbitration request. First of all, I'm right in understanding, in your red brief, you said you are not going to invoke preclusion. Correct. So it will be de novo. What court of appeals gets the appeal of that? The appeal from the Illinois District Court? Yes, which doesn't have a patent claim in it. It's only an Arbitration Act claim, so I started getting uncertain where that appeal would go. It would go to the Tenth Circuit, I'm sure. It would go to the Tenth Circuit, and just to speak to that point very quickly, well, let me answer your question first. The appellate court that governs the Northern District of Illinois is in the Seventh Circuit. Is that where it would go? It would go. Does it somehow come here because it's about an underlying dispute that is elsewhere, a 1338 patent claim? Your Honor, I think this is sort of an anomalous situation here. I still believe, and this obviously is not an issue that's been briefed, but I believe an appeal from the Colorado District Court could have gone to the Tenth Circuit. Now, this court has ruled that it has jurisdiction over the denials of motions to compel, but it has never held that it has exclusive jurisdiction. It says it has that because over cases that have a patent infringement aspect to it, and this case does. But the Tenth Circuit itself has, in fact, has addressed cases where there's been the denial of a motion to compel. There's been copyright and patent aspects to those cases as well. They could have, in fact, filed with the Tenth Circuit. In fact, we anticipated that they would because we saw Ansari as being their major roadblock. What relevance to the issues in front of us does that? Well, it just has to go, I think, to your question, Your Honor, as to which court would have done it. But with respect to this waiver argument, you know, it's- One thing that was different then from the current state of play is that it's, as far as I can tell, but tell me if I'm wrong about this, it was only in your red brief here that you said, no preclusion by the Colorado court's ruling on the Illinois District Court's determination of arbitrability. Correct. And the reason we did that is because that was the first opportunity that we had to address the issue because in our motion to compel, or excuse me, our motion to dismiss, which was filed with this court prior to the briefing on the merits, they had raised the preclusion argument. They didn't raise the preclusion argument any sooner than that. And our response to that was that there isn't going to be preclusion because in our view- Just help me think about this. Here's, I guess, what I'm trying to think about. This is the passage at A735-736, which your friend on the other side points to as a waiver. So you told the Illinois court you should hold off because the Colorado court is going to address these issues. Now, if whatever the Colorado court was going to do was not going to have any preclusion, what sense did that argument make? It made sense because they could have, and I think this relates to your question, Your Honor, they could have appealed to the Tenth Circuit and asked the Tenth Circuit to revisit Ansari because at the end of the day, the Tenth Circuit, and they've hinted at this in the footnote to their reply brief. Their certiorari reference footnote? The certiorari reference. They've hinted that, in fact, there is a divergence between the circuits, and if there's a divergence between the circuits, they've indicated that they can seek the United States Supreme Court review of this. But certainly, in the first instance, they could go back to the Tenth Circuit and say, look, Ansari's wrongly decided. Here's all these other circuits, and they've decided differently that, in fact, you can compel arbitration outside of your district. And had they done that, and presumably we anticipated they could have because, of course, they hit that roadblock of Ansari right away, then that made perfect sense for the Illinois court to just hold off and see what happened because ultimately, if the possibility existed that Ansari could have been revisited in the Tenth Circuit, they might have gotten a remand. They might have gotten the opportunity to go back and get the Colorado District Court to compel arbitration. In fact, I'd like the court particularly to focus on the reply brief that they did file in the Colorado District Court, and particularly in record at A400, because there they changed the relief that they were asking for. And this court should not let them off the hook based on what, in fact, they did ask. They initially asked for a stay pending arbitration, but by the time they got to their reply brief, after realizing that they had filed their motion to compel in the wrong court, they changed the relief they wanted. They specifically asked the court to stay the case so that the Illinois court may act to dismiss the case for the wrong venue or to just decide if it could to ignore Ansari and go ahead and compel arbitration. By doing that, they not only created a problem under Section 16, because Section 16, in fact, has two pieces to it. It has the 16A. It has the refusal of a stay, but it also needs to be an action under Section 3. They took their request out of an action under Section 3. If you look at the Comrade versus phone directories case, which they cited in the reply brief, that court specifically speaks to what is an action under Section 3. And it says, quote, if the essence of the movement's request is that the issues presented be decided exclusively by an arbitrator and not by any court, then the denial of that motion may be appealed under Section 16A. Well, they didn't want it decided by the arbitrator anymore. By the time they hit the reply brief, they were asking the Colorado District Court to stay pending the Illinois court's ruling. And under the language in Comrade, that creates another problem, because they essentially took their motion out from under Section 3. Now, because of this, they have two problems. They have the fact that there was no refusal of a stay, because as this court has already determined. I want to ask you a question about that. Do you see daylight, or is there a difference between not granting a stay and refusing a stay, as you see the language is refusing a stay in 16A1A? Right. I do, Your Honor. I think a district court has discretion to decide to defer a ruling. And in this particular instance, the court invited briefing. I mean, it set a briefing schedule. Thirty days from now, you submit briefing. Granted, and counsel was correct. The district court said, I want you to brief on the preclusive effect. And that is what the judge invited. But in fact, there was nothing that prevented them from going back to the court and saying, look, you haven't ruled on our request to stay the entire case. And under Section 16, you need to address that issue as well. By deferring, is that effectively a refusal to stay? Well, Your Honor, that's a very good question. And whether it is effective, I don't believe it is, because in this particular instance, the court made it very clear that it hadn't made a complete decision on staying the entire case. And what would be the appropriate avenue if a court just kept deferring? Obviously, 16A was meant to allow for immediate appeal. When stays aren't granted, allowing a district court to defer and defer and defer would be problematic. Because it would undermine the purpose, certainly intent. Your Honor, that's correct. That would be the case. Would Mandamus be the vehicle they should use then if the district court continues to refuse to rule on the motion rather than appeal under 16A? I believe that's correct, Your Honor, because we aren't dealing with a situation where there were multiple deferrals. We aren't dealing with a situation where the district court said, I just have an issue with making this decision. The district court, in fact, engaged in somewhat of an advisory opinion by parsing the claims and making an arbitrability decision, but then ultimately concluding it couldn't do anything about the decision that it made. But at the end of the day, the district court did say it was going to revisit the stay of the entire case. That was the language it used in its order. And I think you take the district court at face value, that Judge Moore, in fact, intended to do that. And he did not get the opportunity to because, and maybe this is you know, this goes directly to your point, Judge Stoll, maybe it's because they interpreted his, that their understanding was that, well, he denied the stay, he effectively denied the stay, and we're going to go ahead and take that position. But he did not. I mean, it was very clear he intended to reach that issue at some point in time. Can I switch topics completely? And I hope this isn't too unfair because Mr. Kupar wanted to talk about this and I basically wouldn't let him. How can the, this is the merits, how can those claims that involve the silent hitch pins not be within this fairly broad, I don't want to get into an argument about broad, but within the arising under or relating to the settlement agreement because they were entitled to sell some number of silent hitch pins and your accusation of infringement of various sorts might well be answered by saying no, these are the ones we were entitled to sell. Well, and the reason that it isn't, you're dealing with, or your question goes to the phaseout and certainly they had a phaseout. The allegation in the complaint, which is what the district court had to accept as true, was that the phaseout had been completed. So we are looking then at a fact that... Can you show me that the complaint says that the phaseout has been completed? I believe that's accurate Your Honor. Show that to me. Let me see if I can find the reference really quickly. ...